UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC., | Case No. 21-cv-04895-JST |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART SMARTCAR, INC.'S MOTION TO DISMISS** |
| SMARTCAR, INC., | Re: ECF No. 19 |
| Defendant. | |

Before the Court is Smartcar, Inc.'s motion to dismiss Volkswagen Group of America, Inc.'s complaint. ECF No. 19. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

Smartcar is a technology company that develops application programming interfaces ("APIs") for cars. An API is an intermediary between software products that allows them to communicate with each other. Smartcar's APIs allow app developers to create software products compatible with the software systems in many modern cars, thus allowing developers to create apps that can access and obtain data about the car's health; monitor and manage electric vehicle charging; issue digital car keys; and lock and unlock cars.

Volkswagen Group of America, a subsidiary of the German company Volkswagen AG, manages the American operations of Volkswagen AG car brands that include Volkswagen and Audi.[1] Volkswagen alleges that Smartcar has violated its rights by developing and promoting Volkswagen- and Audi-compatible APIs. Volkswagen brings false association claims under federal trademark law, 15 U.S.C. § 1125(a); claims under California's Unfair Competition Law

---

[1] Because Volkswagen Group of America is the only plaintiff in this suit, the Court refers to it simply as "Volkswagen" for ease of reading.

1    ("UCL"), California Business & Professions Code § 17200, *et seq.*; claims under the Computer

2    Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; claims under California's Comprehensive

3    Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502 (West 2020); contract claims; and

4    trespass-to-chattels claims.  Smartcar moves to dismiss these claims under Rules 12(b)(6) and

5    12(b)(1) of the Federal Rules of Civil Procedure, arguing that Volkswagen's complaint does not

6    state any plausible claim and that Volkswagen lacks statutory standing to pursue its UCL claim

7    because it has not alleged an economic injury.  Smartcar opposes the motion.

8    **II.     JURISDICTION**

9            This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367.

10   **III.    LEGAL STANDARD**

11           **A.      Rule 12(b)(1)**

12           A plaintiff has standing to sue in federal court only if they have (1) suffered an injury in

13   fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

14   be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

15   "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an

16   Article III federal court therefore lacks subject matter jurisdiction over the suit."  *Cetacean Cmty.*

17   *v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  "In that event, the suit should be dismissed under

18   Rule 12(b)(1) [of the Federal Rules of Civil Procedure]."  *Id.*  "A Rule 12(b)(1) jurisdictional

19   attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations

20   contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast,

21   in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would

22   otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

23   Cir. 2004) (citation omitted).

24           **B.      Rule 12(b)(6)**

25           A complaint must contain "a short and plain statement of the claim showing that the

26   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint need not contain detailed factual

27   allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the

28   speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to

United States District Court
Northern District of California

1    dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

2    relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A

3    claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

4    the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The Court

5    must "accept all factual allegations in the complaint as true and construe the pleadings in the light

6    most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

7    **IV.    DISCUSSION**

8        **A.    False Association**

9        Smartcar moves to dismiss Volkswagen's false association claim on the grounds that its

10   use of Volkswagen's marks constituted nominative fair use.  Under the nominative fair use

11   doctrine, a defendant may defeat a false association claim by showing that (1) the product at issue

12   is not readily identifiable without the use of the plaintiff's mark; (2) the defendant used only so

13   much of the mark as is reasonably necessary to identify the product at issue; and (3) the defendant

14   did nothing that would, along with the mark, suggest sponsorship or endorsement by the plaintiff.

15   *New Kids on the Block v. News Am. Publ'g., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).  Smartcar

16   argues that it could not show that its APIs are compatible with Volkswagen and Audi without

17   using their marks; it did not use more of the marks than reasonably necessary; and it did not

18   suggest Volkswagen's sponsorship or endorsement when using the marks.

19       Volkswagen raises two main arguments in opposition to Smartcar's nominative fair use

20   defense.  First, Volkswagen makes a threshold argument that "nominative fair use cannot be

21   resolved on [a] motion to dismiss."  ECF No. 25 at 11.  Second, if the Court rejects that argument

22   and reaches the merits of Smartcar's nominative fair use claim, Volkswagen argues that Smartcar

23   cannot rely on the fair use defense because Smartcar has used more of Volkswagen's mark than is

24   reasonably necessary and because Smartcar's use of Volkswagen's mark suggests Volkswagen's

25   sponsorship or endorsement of Smartcar's technology.

26       The Court begins by rejecting Volkswagen's threshold argument.  Fair use is an

27   affirmative defense to a false association claim, and the Ninth Circuit has held that "affirmative

28   defense[s] may be considered properly on a motion to dismiss where the 'allegations in the

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1   complaint suffice to establish' the defense." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir.

2   2013) (citation omitted); *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013)

3   (holding that fair use may be decided at the motion-to-dismiss stage when "the facts necessary to

4   establish the defense are evident on the face of the complaint").  Courts in the Ninth Circuit have

5   thus recognized that fair use may be decided on a motion to dismiss by looking solely to the

6   complaint.  *See, e.g.*, *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 974 n.6 (S.D. Cal.

7   2020).  Whether a complaint suffices to establish the defense, however, is a different matter, and

8   disputed questions of fact will often preclude granting a motion to dismiss based on a fair use

9   defense.  *See, e.g.*, *Comparion Med. Analytics, Inc. v. Prime Healthcare Servs., Inc.*, No. 2:14-

10   CV-3448 SVW (MANx), 2014 WL 12589670, at *3 (C.D. Cal. Oct. 22, 2014) (acknowledging

11   that a fair use defense can be decided at the motion-to-dismiss stage but deferring resolution of the

12   defense because of disputed questions of fact).

13          On the merits, however, the Court finds that Smartcar has not shown all three elements of a

14   fair use defense.  One of the elements of the fair use defense is that a defendant use "only so much

15   of the mark . . . as is reasonably necessary to identify the product or service."  *New Kids*, 971 F.2d

16   at 308.  Smartcar contends that it satisfies this element because "referring to a car manufacturer by

17   its name is the only way to make the compatibility readily identifiable."  *See* ECF No. 19 at 12.

18   But referring to Volkswagen and Audi by their names is not all that Smartcar does.  To the

19   contrary, the complaint shows that Smartcar not only uses the Volkswagen and Audi names, but

20   displays photos of Volkswagen and Audi cars with their respective logos.  *See* ECF No. 1-1 at 8

21   (Exhibit A); ECF No. 1-2 at 4 (Exhibit B).  So although it is true that Smartcar could not signal to

22   consumers that its technology is compatible with Volkswagen and Audi cars without using the

23   Volkswagen and Audi names (as well as the names of the car models compatible with Smartcar's

24   technology), Smartcar *could* signal this to consumers "without using the visual trappings of the

25   [Audi and Volkswagen] brand[s]," namely, photos of the cars with their respective logos.  *See*

26   *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1181 (9th Cir. 2010); *see also Applied*

27   *Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 895 (9th Cir. 2019) (finding fair use when

28   defendant "used only the words [of the company and its service] themselves" and not "[the logo]

4

or the stylized lettering of Plaintiff's registered marks").  The Court does not now decide that Smartcar has used more of Volkswagen's marks than was reasonable necessary; a jury can decide that question at a later time.  For now, however, the Court decides that Volkswagen has plausibly alleged that Smartcar exceeded that threshold.  Smartcar's motion to dismiss this claim on the grounds of nominative fair use is therefore denied.

### B.    UCL

Smartcar next moves to dismiss Volkswagen's UCL claims.  Smartcar seeks dismissal under Rule 12(b)(6) and 12(b)(1).  Smartcar bases its 12(b)(6) motion on the ground that Volkswagen's trademark claim is not viable.  Because the Court rejected that argument in the preceding section, it denies Volkswagen's 12(b)(6) motion also.

Smartcar's argument for dismissal under Rule 12(b)(1) is that Volkswagen lacks statutory standing because it "does not allege sufficient facts to demonstrate an injury – that it lost money or property – under the UCL."  ECF No. 19 at 15.  Smartcar contends that Volkswagen's complaint merely alleges that Volkswagen "has been damaged," which Smartcar argues is not enough to show economic injury under the UCL.  *See* ECF No. 19 at 15-16 (quoting ECF No. 1 ¶ 37).  And although Volkswagen replies that it "has sustained a diminished present or future property interest" in the form of "diminution in the value of its services and loss of consumer goodwill," ECF No. 25 at 16, Smartcar notes that no such allegations exist in Volkswagen's complaint, ECF No. 28 at 12.

The Court agrees that Volkswagen's complaint lacks allegations sufficient to state an economic injury that confers UCL standing, but notes that Rule 12(b)(6) – not Rule 12(b)(1) – is the proper route for dismissing a UCL claim for lack of statutory standing.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (noting that "lack of *statutory* standing requires dismissal for failure to state a claim") (emphasis in original).  "Beyond Article III's standing requirements, the UCL further requires a plaintiff to demonstrate that she 'lost money or property as a result of such unfair competition.'"  *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535, at *4 (N.D. Cal. Mar. 29, 2021) (citations omitted).  Volkswagen's complaint does not meet this requirement.  It merely alleges that Volkswagen was "damaged" by "false association."  *See* ECF

No. 1 ¶¶ 36-37.  It does not, as Volkswagen claims, say anything about diminution in value or loss of consumer goodwill.  *Cf. Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 948 (S.D. Cal. 2016) (finding allegations of "lost sales, market share, and goodwill" sufficient to allege a UCL claim against competitor).  The sparse allegations in Volkswagen's complaint thus do not satisfy the allegations of economic injury that the UCL requires.  *See Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-3738 ABC (CWx), 2010 WL 11463697, at \*10 (C.D. Cal. Sept. 20, 2010) (dismissing a UCL claim when plaintiff "only conclusory alleged the loss of a property interest, loss of goodwill, and economic and financial loss due to Defendants' conduct, without alleging any specific facts as to what was lost and how").  Nor can the Court consider Volkswagen's arguments in opposition to Smartcar's motion to dismiss as if they were factual allegations included in Volkswagen's complaint.  *See Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1130 (C.D. Cal. 2010) ("[T]he Court cannot treat factual statements in the Opposition as though they were contained in the Complaint itself.").  Smartcar's motion to dismiss the UCL claim is therefore granted with leave to amend.

## C.    CFAA

The CFAA proscribes both "access[ing] a computer without authorization," and "exceed[ing] authorized access."  18 U.S.C. § 1030(a)(2), (e)(6).  Volkswagen brings claims under both the "without authorization" and "exceeds authorized access" prongs of the CFAA, alleging that Smartcar unlawfully accessed Volkswagen's networks to obtain data to develop its API.  Smartcar moves to dismiss the CFAA claims as insufficiently supported by factual allegations.

Beginning with the "without authorization" prong of the CFAA, Smartcar contends that the complaint's allegations are too vague to plausibly allege that Smartcar accessed Volkswagen's networks without permission.  According to Smartcar, Volkswagen's theory of unauthorized access rests on factual allegations suggesting that Volkswagen revoked the access Volkswagen granted to Smartcar through a non-disclosure agreement that allowed Smartcar access to Volkswagen's networks when they were exploring a mutual partnership (which Volkswagen later decided not to pursue).  But Smartcar argues those factual allegations cannot support Volkswagen's CFAA claim for two reasons.

United States District Court
Northern District of California

First, Smartcar contends that Volkswagen's revocation hinges on events that do not clearly show revocation: Volkswagen giving "notice" to Smartcar in 2019 that Smartcar's access to Volkswagen's network was unauthorized, and Volkswagen sending an unspecified cease-and-desist letter to Smartcar in 2020.  Smartcar argues that revocation must be unequivocal, and Volkswagen's allegations about those events are too vague to satisfy that standard.  Second, Smartcar contends that even if those events do show revocation, they extend only to any access granted by the NDA, but not to the other forms of access through which Smartcar could have obtained the information necessary to develop its API, i.e., access via customer log-in credentials provided by the customers themselves, and access via vehicles purchased by Smartcar (which would allow Smartcar to obtain its own log-in credentials).  Smartcar further argues that it is implausible to think that Smartcar used an unauthorized form of access when it had available two other forms of access which had never been revoked.

The Court agrees that Volkswagen has not plausibly alleged that Smartcar accessed its networks "without authorization."  Volkswagen's theory of unauthorized access rests on just a few factual allegations that it says show that Smartcar violated the CFAA by accessing its networks after it revoked access: that, after learning that Smartcar had begun developing APIs, in August 2019 Volkswagen "put Smartcar's CEO Sahas Kattas on notice that Smartcar's access to [Volkswagen's] Networks was unauthorized," and "reiterated" that point in a "cease and desist letter" in November 2020.  ECF No. 1 ¶ 45.  Although (contrary to Smartcar's argument) those allegations are enough to plausibly allege revocation, they relate to only one of the three forms of access the complaint says Smartcar had as its disposal to develop its APIs: the access Volkswagen granted to Smartcar under the NDA when they were exploring a partnership.  Because Volkswagen's theory of unauthorized access rests entirely on revocation and the complaint alleges revocation of only one of three forms of access allegedly available to Smartcar, the Court finds that Volkswagen has not plausibly alleged that Smartcar accessed its networks "without authorization."  Volkswagen's CFAA claim under that prong is therefore dismissed with leave to amend.

Turning next to the "exceeds authorized access" prong of the CFAA, Smartcar argues that

7

United States District Court
Northern District of California

1    Volkswagen's CFAA claim under that prong should be dismissed because the Supreme Court

2    made clear in *Van Buren v. United States*, 141 S. Ct. 1648 (2021), that the CFAA does not expose

3    individuals to liability for terms of service violations, which is what Volkswagen's complaint

4    alleges Smartcar did to exceed its authorized access to Volkswagen's networks.  Volkswagen

5    responds that *Van Buren*'s holding did not extend to terms of service violations and any

6    suggestion to the contrary "was merely dicta."  ECF No. 25 at 20.  As a fallback, Volkswagen also

7    argues that its complaint "alleged that Smartcar used its limited authorized access to

8    impermissibly hack into the back end of [its network]," which *Van Buren* plainly held violates the

9    CFAA's "exceeds authorized access" prong.  *Id.*

10       The Court rejects Volkswagen's arguments.  To start, the Supreme Court in *Van Buren*

11   made clear that the CFAA does not expose to liability those who violate terms of service.  141 S.

12   Ct. at 1661.  In fact, one of the reasons animating the Supreme Court's decision in *Van Buren* was

13   the danger of reading the "exceeds authorized access" prong to encompass terms of service

14   violations, which would make unlawful the day-to-day activity of millions of persons.  *Id.*

15   (expressing that the government's reading of the "exceeds authorized access" clause would

16   "criminalize[] every violation of a computer-use policy," making "millions of otherwise law-

17   abiding citizens [] criminals").  A terms of service violation does not qualify as exceeding

18   authorized access, and Volkswagen cannot maintain a CFAA claim on that basis.

19       Next, Volkswagen mistakenly argues that its complaint alleges the kind of impermissible

20   hacking that *Van Buren* recognized as unlawful under the "exceeds authorized access" prong of

21   the CFAA.  For one, Volkswagen's opposition is the first time it mentions any kind of

22   "hack[ing]"; its complaint contains no hacking allegations.  *Compare* ECF No. 25 at 20 (stating

23   that "Smartcar used its limited authorized access to impermissibly hack into the back end of

24   [Volkswagen's] Services to develop its API"), *with* ECF No. 1 ¶ 44 (stating that Smartcar

25   "impermissibly access[ed] [Volkswagen's] back-end systems far beyond the permitted *terms of*

26   *use*") (emphasis added).  For another, the paragraph Volkswagen points to as evidence that it

27   alleged hacking is again focused on *improper use* of authorization.  ECF No. 1 ¶ 44 (alleging

28   Smartcar exceeded what was "permitted [under the] terms of use").  But as the Court has already

8

explained, the CFAA's "exceeds authorized access" prong does not extend liability to improper use; it extends liability only to hacking. Because the "exceeds authorized access" prong of the CFAA does not make unlawful the conduct Volkswagen alleges in its complaint, the Court dismisses this claim with leave to amend.

### D.    CDAFA

The CDAFA proscribes "knowingly access[ing] and without permission" taking, copying, or using information improperly from a computer network. Cal. Penal Code § 502(c)(1)-(7), (9)-(13). Smartcar moves to dismiss this claim on two grounds.

First, Smartcar argues that the claim is not plausible. ECF No. 19 at 19. The argument consists of passing references to the *Iqbal* and *Twombly* decisions without further elaboration and substance, and the Court rejects it.

Second, Smartcar argues that Volkswagen fails to allege that Smartcar obtained access either without permission, or by overcoming a "technical or code-based barrier" to Volkswagen's networks. *Id.* This argument also is not persuasive. Unlike the CFAA, CDAFA "does not require *unauthorized* access. It merely requires *knowing* access." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015) (emphasis in original). Moreover, unlike the CFAA, which criminalizes only "unauthorized access," the CDAFA also criminalizes "unauthorized use." *Id.* (emphasis omitted). Someone who "log[s] into a database with a valid password and subsequently tak[es], cop[ies], or us[es] the information in the database improperly" is therefore liable under the CDAFA. *Id.*; *see also Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) ("Because plaintiffs have alleged Google's knowing access to, and unpermitted taking of, plaintiffs' app activity data, they adequately state a claim under the CDAFA.").[2] Smartcar's motion to dismiss this claim is denied.

---

[2] Smartcar relies on decisions from this Court that it believes suggest "misused login credentials are [not] sufficient to state a claim for violation of CDAFA." ECF No. 28 at 17 (citing *Enki Corp. v. Freedman*, No. 13-cv-02201-PSG, 2014 WL 261798 (N.D. Cal. Jan. 23, 2014)). That authority, however, predates the Ninth Circuit's decision in *Christensen*, 828 F.3d 763, which held that the CDAFA encompasses the use of a valid password for an improper purpose.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### E.    Contract and Tort Claims

Smartcar moves to dismiss Volkswagen's contract- and tort-based claims under two

theories: (1) that they should be dismissed with prejudice because they duplicate Volkswagen's

statutory claims; and (2) that they are not supported by factual allegations that make the claims

plausible.

#### 1.    Duplicative Claims

The Court begins by rejecting Smartcar's argument that Volkswagen's tort- and contract-

based claims should be dismissed with prejudice because they are "entirely duplicative" of

Volkswagen's statutory claims.  *See* ECF No. 19 at 20.  The Ninth Circuit has made clear that

plaintiffs may plead alternative bases of liability.  *See Astiana v. Hain Celestial Grp., Inc.*, 783

F.3d 753, 762 (9th Cir. 2015) (unjust enrichment claim should not be dismissed merely "because it

was duplicative of or superfluous to [plaintiff's] other claims").  Courts in this district have read

*Astiana* to preclude dismissal of duplicative claims that provide alternative bases for relief.  *See*

*Garcia v. Harley-Davidson Motor Co., Inc.*, No. 19-CV-02054-JCS, 2019 WL 6050768, at *11

(N.D. Cal. Nov. 15, 2019) (finding that *Astiana*'s logic precluded the district court from

dismissing a declaratory judgment claim that defendants argued duplicated claims for damages

and injunctive relief); *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158639, at

*7 (N.D. Cal. Sept. 2, 2015) ("*Astiana* provides that a plaintiff is permitted to plead an unjust

enrichment claim in the alternative, *see* Fed.R.Civ.P. 8(d)(2), even if, as here, it is questionable

whether that alternative claim provides any prospect for relief independent of the causes of action

already alleged.").  Smartcar's reliance on *Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2020

WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) to argue otherwise is inapt.  The court there simply

held that "courts of equity should not act when the moving party has an adequate remedy at law."

*Id.* (citation and quotations omitted).  It did not hold, as Smartcar suggests, that a plaintiff may not

plead statutory and common law claims which have overlapping factual predicates and which seek

– in Smartcar's words – "*nearly* identical relief."  ECF No. 28 at 18 (emphasis added).  The Ninth

Circuit's decision in *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 611 (9th Cir.

2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684, 209 L. Ed. 2d 464 (2021)

also does not help Smartcar.  The Ninth Circuit there affirmed the district court's dismissal of a contract-based bad faith claim, not because it was duplicative, but because plaintiff failed to plead the additional elements required to make out a bad faith claim.  *Id.* at 611 (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990); *see also Careau*, 222 Cal. App. 3d at 1395 ("[A]llegations which assert . . . a claim [for breach of the covenant of good faith] must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.").  Smartcar cites no authority, however, suggesting that, under California law, Volkswagen's statutory claims subsume its tort and contract claims.  At this stage in the litigation, the Court finds that Smartcar may maintain its statutory and common law claims even if they rest on similar factual allegations. The Court therefore denies Smartcar's motion to dismiss Volkswagen's contract and tort claims as duplicative of its statutory claims.

### 2. Tortious Interference

Tortious interference with contractual relations requires that a plaintiff allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages."  *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1160-61 (N.D. Cal. 2020) (citation omitted).

Smartcar argues that Volkswagen's tortious interference claim alleges nothing more than "speculative and conditional" "disruption and economic harm . . . to its ongoing contractual relationship with its customers," which Smartcar says falls short of stating a tortious interference claim.  ECF No. 19 at 21.  Smartcar says that Volkswagen alleges no actual disruption to its contractual relationships with customers, only that "*when required*, [Volkswagen] *will* suspend or terminate users violating its TOS," ECF No. 19 at 21-22 (citing ECF No. 1 ¶ 66 (emphasis

11

1    added)), and no economic harm because Volkswagen alleges no loss of customers; or loss of

2    payments from those customers; or customer complaints.  ECF No. 19 at 21-22.  Volkswagen

3    responds by arguing that its complaint alleges that Smartcar induced its customers to breach its

4    terms of service, and that such breach damaged Volkswagen in several ways, including

5    "burdening [its] Networks with unauthorized, unmonitored, uncontrolled and unanticipated third

6    party use."  ECF No. 25 at 23-24 (citing ECF No. 1 ¶ 65).  Smartcar maintains those allegations

7    are insufficient because Volkswagen does not allege a specific instance of access by a third-party

8    app developer.  ECF No. 28 at 18-19.

9           The Court finds that Volkswagen has plausibly alleged breach but not damages.

10   Volkswagen alleges not only that Smartcar induced Volkswagen's customers to violate the terms

11   of service, but also explains "the specific contractual provisions" it alleges its customers breached.

12   ECF No. 1 ¶ 63; *see Hassan v. Facebook, Inc.*, No. 19-CV-01003-JST, 2019 WL 3302721, at *3

13   (N.D. Cal. July 23, 2019).  That plausibly shows breach.[3]  As for damages, however, Volkswagen

14   alleges only that those breaches "ha[ve] and will" harm its contractual relationships by "exposing .

15   . . its customers and users to malfeasance by third parties using Smartcar's APIs," and preventing

16   Volkswagen from controlling third parties who "could harm [Volkswagen's] users."   ECF No. 1 ¶

17   65.  Those allegations are too conclusory and speculative to show that Volkswagen has suffered

18   economic damage because of Smartcar's interference with its contractual relationships with its

19   customers.  *See Infectolab Ams. LLC v. ArminLabs GmbH*, No. 20-CV-03318-VKD, 2021 WL

20   292182, at *5 (N.D. Cal. Jan. 28, 2021) ("Infectolab does not allege sufficient facts demonstrating

21   how its relationship with AID (contractual or otherwise) has been affected, if at all, to Infectolab's

22   economic detriment."); *Park Miller, LLC v. Durham Grp., Ltd.*, No. 19-CV-04185-WHO, 2020

23   WL 1955652, at *10 (N.D. Cal. Apr. 23, 2020) (finding that lost customers, reduced revenue,

---

[3] In its motion, Smartcar alleged only that Volkswagen failed to allege the "actual breach or disruption of the contractual relationship" and "resulting damages" of this tort.  ECF No. 19 at 20-21 ("VWGoA has failed to plead the fourth and fifth required elements of this claim.").  In reply, however, Smartcar argues for the first time that Volkwagen also fails to plead the existence of a valid contract.  ECF No. 28 at 18.  Because this argument was raised for the first time on reply, the Court does not consider it.  *Holley v. Gilead Scis., Inc.*, 379 F. Supp. 3d 809, 821 n.5 (N.D. Cal. 2019).

United States District Court
Northern District of California

1    customers threatening lawsuits, and reputational harm plausibly showed damage).  The Court

2    therefore dismisses Volkswagen's tortious interference claim with leave to amend.

3                        **3.        Breach of Contract**

4          Smartcar moves to dismiss Volkswagen's breach of contract claims under Volkswagen's

5    terms of service and the non-disclosure agreement Smartcar and Volkswagen signed in May 2016

6    when they were exploring a partnership.  A valid breach claim requires (1) a contract, (2)

7    performance or excuse for nonperformance by the party bringing the breach claim, (3) breach by

8    the other party, and (4) damages.  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

9                        **a.        Terms of Service**

10         Smartcar argues that Volkswagen's terms of service breach claim should be dismissed

11   because Volkswagen "fails to allege the 'specific provisions in the contract' it claims Smartcar

12   violated or even attach the TOS to the Complaint; rather, it gives a general, vague description of

13   these provisions."  ECF No. 19 at 22-23 (quoting *Kidstar v. Facebook Inc.*, No. 20-CV-05408-SK,

14   2021 WL 1110227, at *3 (N.D. Cal. Mar. 23, 2021)).

15         Smartcar is correct.  Although Volkswagen summarizes its terms of service in general

16   terms, *see* ECF No. 1 ¶ 22, 73, it does not specifically allege the provisions that Smartcar is

17   alleged to have violated.  Volkswagen's breach of contract claim based on the terms of service is

18   therefore dismissed with leave to amend.

19                        **b.        Non-Disclosure Agreement**

20         Smartcar argues that Volkswagen's breach claim based on the non-disclosure agreement

21   fails for similar reasons.  Smartcar contends that Volkswagen "has not alleged the specific contract

22   terms it claims were breached; it only provides brief summaries of what it claims are relevant

23   provisions of the NDA," nor has Volkswagen alleged "its own performance, or excuse for

24   nonperformance under the NDA."  ECF No. 19 at 23.  Smartcar also reprises an argument it used

25   against Volkswagen's CFAA claim: that "because [Volkswagen] alleges that Smartcar had two

26   other authorized means of access to [Volkswagen's] networks apart from any access granted

27   subject to the NDA . . . it does not and cannot claim that the NDA, which only pertained to access

28   granted in connection with the parties' business relationship, governed Smartcar's alleged

United States District Court
Northern District of California

13

1    conduct." *Id.* (emphasis omitted).

2        The Court agrees with Volkswagen on both points.  First, Volkswagen has generally

3    summarized, but not actually identified, the NDA contract terms Smartcar allegedly violated.

4    Volkswagen also has not pleaded plausible allegations that Smartcar developed its APIs by

5    "gain[ing] unauthorized access to [Volkswagen's] Networks by misusing [the] log-in credentials

6    provided pursuant to the NDA," *id.* at 17, as opposed to the other means of access Smartcar had

7    available.  The Court therefore dismisses this claim with leave to amend.

8                    **4.    Trespass to Chattels**

9        The California Supreme Court has explained that trespass to chattel requires "an

10   intentional interference with the possession of personal property [that] has proximately caused

11   injury." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350-51 (Cal. 2003) (cleaned up) (emphasis

12   omitted).  "Short of dispossession, personal injury, or physical damage . . . intermeddling is

13   actionable only if the chattel is impaired as to its condition, quality, or value, or the possessor is

14   deprived of the use of the chattel for a substantial time." *Id.* at 1357 (cleaned up).  Deprivation of

15   use "must be for a time so substantial that it is possible to estimate the loss." *Id.*  The California

16   Supreme Court has thus emphasized that, in the computer context, a defendant "temporarily

17   us[ing] some portion of [a company's] computers' processors or storage is [] not enough," there

18   must be "some measurable loss from the use of [the] computer system." *Id.*

19       The Court finds that Volkswagen has not alleged sufficient facts to plausibly support a

20   trespass-to-chattels claim.  Volkswagen's claims of injury – that Smartcar's "unauthorized access

21   has and will result in harm to [Volkswagen], including . . . burdening [its] Networks with

22   unauthorized, unmonitored, uncontrolled and unanticipated third party use" are too vague and

23   generalized to plausibly state measurable harm.  *See* ECF No. 1 ¶ 91; *cf. hiQ Labs, Inc. v.*

24   *LinkedIn Corp.*, No. 17-CV-03301-EMC, 2021 WL 1531172, at *10 (N.D. Cal. Apr. 19, 2021)

25   (finding that plaintiff stated a plausible claim of trespass to chattels by alleging the specific

26   burdens its servers and infrastructure suffered due to online bots).  The Court therefore dismisses

27   this claim with leave to amend.

28   / / /

United States District Court
Northern District of California

14

**CONCLUSION**

For the reasons set forth above, the Court grants Smartcar's motion to dismiss in part and denies it in part.  The Court grants leave to Volkswagen to file an amended complaint within 28 days solely to cure the deficiencies identified in this order.

**IT IS SO ORDERED.**

Dated:  July 7, 2022

_____
JON S. TIGAR
United States District Judge